UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CHANA BILLER,                                          :
                                                       :       **REPORT AND**
                                        Plaintiff,     :       **RECOMMENDATION**
                                                       :
            -against-                                  :       19-CV-7173 (DLI)(PK)
                                                       :
AMERICAN EXPRESS COMPANY AND                           :
EQUIFAX INFORMATION SERVICES LLC,                      :
                                                       :
                                        Defendants.    x
-------------------------------------------------------------

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Chana Biller ("Plaintiff") brought this action against American Express National Bank, named in the Complaint as American Express Company ("American Express"), and Equifax Information Services, LLC ("Equifax", and collectively with American Express, "Defendants") for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). American Express filed a Motion to Compel Arbitration and Stay. (Dkt. 26.) The Honorable Dora Lizette Irizarry referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.     Factual Background**

The following facts are taken from Plaintiff's Complaint ("Compl.," Dkt. 1), the Declaration of Keith Herr ("Herr Decl.," Dkt. 26-2), and Exhibits A and B to the Herr Decl. (the "Cardmember Agreement," Dkt. 26-3, and the "Billing Statement," Dkt. 26-4).

Plaintiff opened a credit card account with American Express in or about October 2007. (Herr Decl., ¶ 3.) All American Express credit cards are subject to a written "Cardmember Agreement" which defines the terms and conditions of the credit card user's account. (*Id.*) A copy of the

1

Cardmember Agreement was sent to Plaintiff in December 2010. (*Id.*; *see also* Cardmember Agreement.) Plaintiff used her American Express card after receiving a copy of the Cardmember Agreement (Herr Decl. ¶ 4; *see also* Billing Statement), which, pursuant to the terms of the Cardmember Agreement, constituted acceptance of the Cardmember Agreement. (Cardmember Agreement at 3.) The Cardmember Agreement contained an arbitration provision, which "sets forth the circumstances and procedures under which claims may be arbitrated instead of litigated in court." (*See* Cardmember Agreement at 8.)

In October 2012, Plaintiff received a billing statement with an attached notice of several changes to the Cardmember Agreement, including an amended arbitration provision. (Herr Decl. ¶¶ 4-5; Billing Statement at 6-10, the "Arbitration Provision.") The billing statement notified Plaintiff, "**You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase, or by February 15, 2013, whichever is later**." (Billing Statement at 8, emphasis in original.) The ability to opt out of arbitration is emphasized a few pages later in the section, "Your Right to Reject Arbitration," which provides further information such as the address to mail the rejection notice. (*Id.* at 10.) Plaintiff did not opt out of the amendment to the Cardmember Agreement. (Herr Decl. ¶ 5.)

The Arbitration Provision[1] defines the term "claim" to mean:

> any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of this Arbitration provision.

(Billing Statement at 8.) It also states that

---

[1] American Express primarily quotes from the original Cardmember Agreement arbitration provision in its memorandum of law. (*See* Dkt. 26-1 at 3-4.) But the Billing Statement makes clear that the amended Arbitration Provision replaced the original language from the Cardmember Agreement. (*See* Billing Statement at 8.) ("Effective January 1, 2013, the Arbitration provision in the Cardmember Agreement is replaced with" the amended Arbitration Provision.) The language from the arbitration provision in the Billing Statement therefore controls.

2

>   *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity…

(*Id.*)  The Arbitration Provision further provides that

>   You or we may elect to resolve any claim by individual arbitration.  Claims are decided by a neutral arbitrator.
>
>   **If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim.  Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.  Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited.  The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court.  Except as set forth below, the arbitrator's decision will be final and binding.  Other rights you or we would have in court may also not be available in arbitration.**

(*Id.* at 9 (emphasis in original).)  The Cardmember Agreement contains a provision that, "You agree that we may give information about your Account to credit reporting agencies.  We may tell a credit reporting agency if you fail to comply with any term of this Agreement.  This may have a negative impact on your credit record." (Cardmember Agreement at 6.)  The Cardmember Agreement is governed by Utah and federal law.  (*Id.* at 8.)

Plaintiff's Complaint alleges that American Express furnished information regarding Plaintiff's American Express credit card to credit reporting agencies, including Equifax, which Plaintiff alleges is inaccurate in that the "account status states that the full balance was charged off but yet the account still includes a current past due balance for the full amount of the debt." (Compl. ¶¶ 12-13.)  Plaintiff notified Equifax in September 2019 that she disputed the information.  (*Id.* ¶ 14.)  Despite being notified by Equifax of Plaintiff's dispute, American Express failed to conduct a reasonable investigation, failed to mark the account as disputed, and continued to report false and inaccurate information about Plaintiff's account.  (*Id.* ¶¶ 15-16, 44-45.)

II.  **Procedural Background**

Plaintiff filed the Complaint on December 22, 2019.  (Dkt. 1.)  Equifax and American Express

3

both answered. (Dkts. 6, 13.) Equifax was dismissed from the case pursuant to a stipulation with Plaintiff. (Dkt. 14, Mar. 13, 2020 Order.)

American Express requested a pre-motion conference on its anticipated motion to compel and stay the case, which Plaintiff opposed. (Dkts. 16, 17.) Judge Irizarry denied the request as unnecessary and ordered the parties to submit a briefing schedule. (May 21, 2020 Order.) The parties filed their fully briefed Motion, Opposition, and Reply. (Dkts. 26, 27, 28.) The Motion was referred to the undersigned for a report and recommendation. (August 6, 2020 Order.) Defendants filed notices of supplemental authority in the form of two decisions from the Southern District of New York addressing motions to compel based on similar allegations and American Express cardmember agreements. (Dkts. 29, 30.)

## **LEGAL STANDARD**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), provides that

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA provides that a party that wishes to compel arbitration pursuant to a written agreement "may petition any United States district court. . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Supreme Court has held that "by its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The FAA "expresses a liberal congressional policy favoring arbitration, and … any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Louis Dreyfus*

*Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

When deciding a motion to compel arbitration, a court must determine "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and, (3) if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

"In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nocosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). Courts "consider all relevant, admissible evidence submitted by the parties and contained in pleadings … together with … affidavits." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)) (ellipses added). Although a trial is necessary if there is a genuine issue of fact to be determined, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Nocosia*, 834 F.3d at 229 (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011)) (alteration added, internal quotations omitted).

## DISCUSSION

### I.     Whether the Parties Agreed to Arbitrate

Federal courts apply "ordinary state-law principles that govern the formation of contracts" to decide "whether parties have agreed to arbitrate a certain matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing cases). The parties agree that Utah law applies to the contract here. (*See* Dkt. 26-1 at 6; Opposition at 6.)

Under Utah law, arbitration provisions in credit agreements are binding and enforceable:

5

> A credit agreement is binding and enforceable … if (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). The Cardmember Agreement here is a credit agreement. *See id.* § 25-5-4(2)(a)(i)(A) (defining credit agreement). American Express provided Plaintiff with a copy of the Cardmember Agreement, the agreement provides that use constitutes acceptance, and Plaintiff used her credit card after receiving a copy of the agreement. (Cardmember Agreement at 3; Herr Decl. ¶ 4; Billing Statement.) Utah law expressly allows for arbitration provisions in credit agreements. *See* Utah Code § 70C-4-102(2)(b). The Cardmember Agreement, including the Arbitration Provision, is therefore binding and enforceable. *See, e.g.*, *Klein v. Experian Info. Sols., Inc.*, No. 19-CV-11156 (PMH), 2020 WL 6365766, at *4 (S.D.N.Y. Oct. 29, 2020) (finding American Express cardmember agreement with arbitration clause enforceable under Utah law); *Butnick v. Experian Info. Sols., Inc.*, No. 20-CV-1631 (PKC)(RLM), 2021 WL 395808, at *7 (E.D.N.Y. Feb. 4, 2021) (same); *Goodall v. Am. Express Co.*, No. 8:18-CV-3009-T-35TGW, 2019 WL 4306404, at *6 (M.D. Fla. Aug. 26, 2019), *R&R adopted*, 2019 WL 4305485 (M.D. Fla. Sept. 11, 2019) (same).

Plaintiff argues that the Arbitration Clause is unenforceable based on two related arguments: that there was no agreement as to key terms, and that the Arbitration Provision is unconscionable.

### A.   Contract Formation

Plaintiff argues that the Arbitration Provision is so broad that no reasonable person would have agreed to it, that there was no meeting of the minds as to the meaning of the clause, and thus there was no agreement to arbitrate at all. In support of this argument, Plaintiff contends that the Cardmember Agreement encompasses "all possible future claims with American Express."[2]

---

[2] Plaintiff argues elsewhere in the Opposition that the Arbitration Provision encompasses "*virtually* all future disputes." (Opposition at 5) (emphasis added).

6

(Opposition at 13.)  It does not.  The Arbitration Provision is limited to "any current or future claim, dispute or controversy relating to [Plaintiff's] Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration Provision."  (Billing Statement at 9.)  By its terms, the Arbitration Provision only encompasses agreements Plaintiff had with American Express at or before the effective date of the Arbitration Provision, or the relationships arising from them.  As noted by the Court in another case with the same defendant, brought by the same plaintiff's counsel, making the same argument, and involving similar language, "Plaintiff's Argument depends on a willful misreading of the Cardmember Agreement."  *See Butnick*, 2021 WL 395808 at *8; *see also Klein*, 2020 WL 6365766 at *4 (rejecting substantially the same argument).[3]

### B.  Unconscionability

Plaintiff relatedly argues that the arbitration clause is unconscionable under Utah law because enforcement would lead to absurd results. (Opposition at 17-25.) "A party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).  Utah law "enables parties to freely contract, establishing terms and allocating risks between them … [it] even permits parties to enter into unreasonable contracts…" *Id.* (internal citations omitted).  Courts may, however,

---

[3] Plaintiff's counsel also argues that American Express's business is so narrow that, as a practical matter, the Arbitration Provision encompasses all possible disputes that could arise between the parties, and no reasonable person would agree to arbitrate all possible future disputes. (Opposition at 12-13.)  The Courts in *Butnick* and *Klein* rejected this argument by Plaintiff's counsel, and the undersigned agrees with the reasoning of those decisions. *Butnick*, 2021 WL 395808 at *7-8; *Klein*, 2020 WL 6365766 at *5 n. 6. The argument relies on a trio of cases that refused to enforce arbitration provisions that encompassed claims unrelated to the original agreements. *See Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003) (refusing to apply arbitration clause covering a payday loan agreement and prior agreements to future, unrelated payday loan agreements); *In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) (refusing to apply oil change arbitration agreement with no language limiting it to prior or related agreements to an unrelated case involving the Telephone Consumer Protection Act); *Wexler v. AT&T Corp*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) (refusing to enforce limitless arbitration provision contained in cell phone service contract in case dealing with unsolicited calls relating to television and internet service).  The issue in those cases was not that the arbitration clauses could encompass all possible claims between the parties, but rather that they were being used to compel arbitration of claims not reasonably related to the underlying contract.

refuse to enforce unconscionable provisions of a contract. *Id.* "Unconscionability, while defying precise definition, has generally been recognized to include an absence of meaningful choice on the part of one of the parties *together with contract terms which are unreasonably favorable to the other party*." *Id.* (quoting *Resource Management Co. v. Weston Ranch*, 706 P.2d 1028, 1043 (Utah 1985)) (emphasis in original).

Utah courts "use a two-pronged analysis" to determine whether a contract is unconscionable. *Commercial Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 285 P.3d 1193, 1203 (Utah 2012) (quoting *Ryan*, 972 P.2d at 402). "The first prong—substantive unconscionability—focuses on the agreement's contents. The second prong—procedural unconscionability—focuses on the formation of the agreement… But substantive unconscionability alone may support a finding of unconscionability." *Id.* (internal quotations and citations omitted).

For a court to find substantive unconscionability, the terms of the agreement must be "so one-sided as to oppress or unfairly surprise an innocent party or [create] an overall imbalance in the obligations and rights imposed by the bargain." *Ryan*, 972 P.2d at 402. Unfairness, unreasonableness, or imbalance are not enough. *Id.* "The standard for proving that a contract provision is unconscionable is very high (that is, the provision or circumstances must shock the conscience)." *Butnick*, 2021 WL 395808 at *8 (*quoting Town Park Hotel Corp. v. Priskos Invs., Inc.*, No. 02-CV-164 (TC), 2006 WL 658896, at *10 (D. Utah Mar. 14, 2006)). Plaintiff argues that the arbitration clause is substantively unconscionable for the same reason rejected above—namely, that the arbitration clause is so broad that it encompasses all possible claims Plaintiff could have against American Express, and enforcement would lead to absurd results. Plaintiff's substantive unconscionability claims are meritless. *See Klein*, 2020 WL 6365766 at *5-6 (rejecting nearly identical arguments regarding substantive unconscionability); *Butnick*, 2021 WL 395808 at *8 (same).

Procedural unconscionability, meanwhile, relies upon a six-factor test, with no single dispositive factor:

> (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions.

*Ryan*, 972 P.2d at 403. Plaintiff argues that the arbitration clause is procedurally unconscionable because: Plaintiff "had no meaningful opportunity to negotiate outside of the opt-out provision" (factor two); "it is a standard form contract drafted by a sophisticated financial institution with vastly superior bargaining power" (factor three); Plaintiff felt compelled to accept the agreement because such contracts "are routinely offered as template contracts in the industry" (factor five); and the arbitration clause is "buried in what can only be described as a 'maze of fine print' when compared to the rest of the Cardmember Agreement" (factor six). (Opposition at 19-20.) Plaintiff thus argues that the arbitration clause "meets at least four of the six indicia of procedural unconscionability…" (Opposition at 23.)

Utah courts have rejected similar arguments. With respect to factors two and three, take-it-or-leave-it form contracts are not necessarily adhesive contracts that prevent choice, and in any event adhesion contracts are not automatically unenforceable. *See Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 906 n.1 (Ct. App. Utah 1995); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) ("the times in which consumer contracts were anything other than adhesive are long past"). As to the fifth factor, in *Ryan*, 972 P.2d at 403, the Utah Supreme Court found no procedural unconscionability where an employer withheld a paycheck from an employee because the employee had several alternative ways to get the paycheck rather than signing the contract. Even assuming access to a credit card is comparable to a paycheck, Plaintiff similarly had numerous alternative credit card providers to

choose from.  As to the sixth factor, the amended Arbitration Provision was sent to Plaintiff along with her October 2012 Billing Statement as an attachment titled, in large, bold font, "Summary of Changes," multiple large-font mentions of "Important Change to Your Account Terms," and in large, bold letters on a separate page, "Changes to the Arbitration Provision," followed by a box containing "Summary of New Claims Resolution Provision (including Arbitration)."  (Billing Statement at 6-7.)  The Arbitration Provision itself is contained on the subsequent pages, which begin with the heading "Important Changes to Your Account Terms," and have bold headings for "**CLAIMS RESOLUTION**" and "**Arbitration**."  (*Id.* at 8-9.)  The undersigned finds that the Arbitration Provision was clearly marked for Plaintiff's review.[4]

Thus, Plaintiff's arguments do not favor a finding of procedural unconscionability because they are not "unreasonably favorable" to American Express.  Furthermore, the option to opt out of the amended Arbitration Provision suggests at least some "meaningful choice" on Plaintiff's part, which she chose not to exercise.  The undersigned therefore finds that the agreement is not procedurally unconscionable.

Because Plaintiff has failed to show any problem of contract formation or any unconscionability in the Cardmember Agreement, the undersigned finds that the parties entered into a valid agreement to arbitrate.

---

[4] Because Plaintiff and Defendants are both basing their arguments on the prior, no-longer-operative arbitration provision in the Cardmember Agreement, their arguments about small font or large font miss the point.  The undersigned notes that the parties' papers are largely cut-and-pasted from other motions in other cases, which perhaps explains why the arguments refer to the wrong arbitration provision.  Regardless, Courts in *Klein* and *Butnick*, in reviewing Plaintiff's nearly identical arguments about the arbitration provision being buried in fine print in similar American Express Cardmember Agreements, rejected those arguments.  *See Klein*, 2020 WL 6365766 at *7; *Butnick*, 2021 WL 395808 at * 9.

**II.     Whether Plaintiff's FCRA Claims Fall Within the Scope of the Arbitration Provision**

### A.     Whether the Court May Determine the Issue of Arbitrability

Neither party argues that the Court is precluded from deciding the issue of arbitrability here. The Arbitration Provision expressly excludes from the definition of "claim" any disputes about "the validity, enforceability or scope of the Arbitration provision." (Billing Statement at 8.) Because nothing in the Arbitration Provision expressly states otherwise, the Court may decide the issue of arbitrability. *See VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.*, 717 F.3d 322, 325 (2d Cir. 2013) ("questions of arbitrability are to be sent to arbitration if and only if the parties clearly and unmistakably expressed their intention to do so") (quoting *First Options*, 514 U.S. at 945).

### B.     Whether FCRA Claims are Exempt from Arbitration

Plaintiff does not argue that FCRA claims are exempt from arbitration. Courts considering the issue have determined that FCRA claims are not exempt from arbitration. *See Ostreicher v. TransUnion, LLC*, No. 19-CV-8174 (KMK), 2020 WL 3414633, at *9 (S.D.N.Y. June 22, 2020) (citing cases compelling FCRA claims to arbitration); *Goodall*, 2019 WL 4306404 at * (citing cases). Consistent with these decisions, the undersigned finds that FCRA claims are not exempt from arbitration.

### C.     Whether Plaintiff's Claims Fall Within the Arbitration Provision

Because "arbitration is a matter of contract," the "parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (citing *First Options*, 514 U.S. at 945). The Arbitration Provision requires arbitration of any claim relating to the Cardmember Agreement or Plaintiff's account. The term "claim" is very broadly defined as "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us … [which] includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity…"

11

(Billing Statement at 8.)  Plaintiff's claims, which all arise under the FCRA, are clearly encompassed within the terms of the arbitration agreement.  *See Klein*, 2020 WL 6365766 at *8 (analyzing the American Express cardmember agreement and concluding that the "language encompasses Plaintiff's statutory FCRA claims."); *Butnick*, 2021 WL 395808 at *10 (finding FCRA claims encompassed within earlier version of American Express cardmember agreement).  The Cardmember Agreement further advised Plaintiff that American Express "may give information about your Account to credit reporting agencies."  Plaintiff's arguments that these claims arise out of statutory and not contractual disputes do not help her, because statutory claims relating to her account or the Cardmember Agreement are unambiguously subject to arbitration.

### III. Motion to Stay

Section 3 of the FAA requires a stay of proceedings in cases where all claims have been referred to arbitration: "[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* … stay the trial of the action until such arbitration has been had …." 9 U.S.C. § 3 (emphasis added).  "[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

Accordingly, the undersigned finds that the proceedings in this case must be stayed pending completion of arbitration.

### CONCLUSION

Based on the foregoing, the undersigned recommends that American Express's Motion to compel arbitration be GRANTED and the case stayed pending arbitration.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  *Caidor v. Onondaga*

*Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

                                                           **SO ORDERED:**

                                                       *Peggy Kuo*

                                                       PEGGY KUO
                                                       United States Magistrate Judge

Dated:    Brooklyn, New York
             February 23, 2021